DECISION
Relator, Norman Parrish, has filed this original action in mandamus requesting this court to issue a writ ordering respondent, Industrial Commission of Ohio ("commission"), to vacate its order denying him wage loss compensation, pursuant to R.C. 4123.56(B), and to enter an order granting said compensation.
Pursuant to Civ.R. 53(C) and Loc.R. 12(M) of the Tenth District Court of Appeals, this case was referred to a magistrate of this court to conduct appropriate proceedings. The magistrate has rendered a decision, including findings of fact and conclusions of law, and has recommended that this court grant relator's request for a writ of mandamus ordering he commission to vacate its order denying relator's wage loss claim. (See attached Appendix.) There have been no objections filed to the recommendation of the magistrate.
Finding no error or other defect on the face of the decision of the magistrate, pursuant to Civ.R. 53(C), we adopt the decision of the magistrate as our own, including the findings of fact and conclusions of law contained therein. In accordance with the decision of the magistrate, the requested writ of mandamus is granted to the extent that it orders the commission to vacate its order denying relator's wage loss claim, and orders the commission to enter a new order in a manner consistent with the decision of the magistrate.
Writ of mandamus granted.
BOWMAN and BRYANT, JJ., concur.
 IN MANDAMUS
In this original action, relator, Norman Parrish, requests a writ of mandamus ordering respondent Industrial Commission of Ohio ("commission") to vacate its order denying him R.C. 4123.56(B) wage loss compensation, and to enter an order granting said compensation.
Findings of Fact:
1. On September 2, 1998, relator sustained an industrial injury while employed as a fire fighter for respondent city of Columbus. The industrial claim is allowed for "sprain lumbar; sprain sacroiliac; L4-L5 extruded disc," and is assigned claim number 98-509136.
2. On or about June 15, 1999, relator resigned his employment as a fire fighter for the city of Columbus. At that time he had attained the rank of lieutenant. In October 1999, the Police and Firemen's Disability and Pension Fund granted relator a partial disability retirement.
3. Thereafter, relator filed an application for wage loss compensation beginning December 8, 1999. On the application, relator indicated that he sought so-called working wage loss compensation and that he had begun employment on December 8, 1999, with Southwestern City Schools and on February 2, 2000, with Master Landscape Management, Inc. ("MLM"), as an office clerk.
4. In support of his application, relator submitted a type-written narrative report from George A. Huntress, D.O., dated January 9, 2000. Dr. Huntress's January 9, 2000 narrative report states in part:
 Mr. Norman Parrish was examined in this office on December 1, 1999, regarding work restrictions based on the above captioned claim. Claim No. 98-508136 involves Mr. Parrish's September 2, 1998, industrial claim which is allowed for "sprain lumbar region; sprain sacroiliac, and L4-5 extruded disc.
* * *
 Physical examination revealed a 51-year-old gentleman, weighing 225 lbs., and whose blood pressure is recorded at 140/98. Examination of the lumbar spine revealed tenderness to palpation, especially to the L4 through S1 spinous process. Range of motion of the lumbar spine is decreased and painful to Mr. Parrish. Forward bending is accomplished to 76 degrees, back bending to 25 degrees, right and left side bending 20 degrees, right and left rotation 20 degrees.
 I have completed the Medical Report you have requested listing Mr. Parrish's restrictions due to the allowed conditions of this claim. In light of the physical findings on examination, it is my opinion that these restrictions are permanent in nature.
5. The record contains the "medical report" referred to in Dr. Huntress's January 9, 2000 narrative report. However, the copy of the "medical report" contained in the record before this court contains a time stamp indicating that it was not filed until May 4, 2001. The "medical report" is a bureau form completed by Dr. Huntress on January 9, 2000. It identifies physical capacities of the injured worker. On this form, Dr. Huntress indicated by marking appropriate boxes, that relator's sitting, standing and walking capacities were less than one hour during an eight hour day. He indicated that relator can only occasionally lift up to ten pounds and he could never lift over that amount. He cannot bend, squat, crawl or climb. He can reach occasionally. He can perform simple grasping, fine manipulation, and pushing/pulling of arm controls.
6. In further support of his wage loss application, relator submitted a three page type-written summary indicating chronologically by month his job search efforts beginning July 1999 through September 2000. According to relator's written summary, in August 1999, he had a job interview with MLM for an office manager job. In September, he had job interviews with Southwestern City Schools and began working there that month as a special education aid substitute. In November 1999, he interviewed with Pam Early, director of early education. He also interviewed with the director of headstart. He had lunch with the owner of MLM to discuss part-time work. In December, while continuing to work at Southwestern City Schools, he accepted a part-time offer from MLM and began training there as an estimator.
In January 2000, relator interviewed for a new grant position as a STARS coordinator. In February, relator filled out an application at the Ohio Bureau of Employment Services. He also had lunch with the director of communications, Tom Truffant, and discussed employment back with the city of Columbus. Also in February 2000, relator accepted a new position with Southwestern City Schools as its STARS coordinator working twenty hours per week. That month he worked sixteen hours per week with MLM.
In March 2000, relator applied with the city of Columbus for a position as a communication technician. During March, April and May 2000, he continued to work twenty hours per week as the STARS coordinator for Southwestern City Schools and sixteen hours per week with MLM as an estimator and performing office duties. In June 2000, relator went to work full time working forty hours per week with MLM. This involved the estimator work, office duties and training. The June 2000 entry indicates that upon completion of the training there was "[p]ossible higher earnings with commission and raises."
7. In further support of his application, relator submitted his earnings statements from Southwestern City Schools and MLM. He also submitted monthly calendars from December 1999 through October 2000, showing how many hours he worked on each day of the month.
8. On November 3, 2000, the administrator of the Ohio Bureau of Workers' Compensation ("bureau") issued an order awarding relator working wage loss compensation. The employer, city of Columbus, administratively appealed the bureau's order.
9. Following a December 21, 2000 hearing, a district hearing officer ("DHO") issued an order that vacated the bureau's order and denied the wage loss application. The DHO's order states in part:
 The payment of working wage loss compensation from 12/08/1999 through 10/31/2000 is denied. The claimant has not met his burden of proving compliance with Rule 4125-1-01 for that period. Specifically, a search for suitable employ-ment which is comparably paying work has not been shown.
 This is currently a "medical only claim," and an average weekly wage or full weekly wage have apparently not been set. Moreover, a lack of wage information in the file prevents an exact determination of either figure at this time. However, a reasonable estimate of the average weekly wage can be made by multiplying the claimant's hourly wage of $22.75, as reported on the FROI-1, by 40 hours. This calculation yields an approximate average weekly wage of $910.00.
 Rule 4125-1-01(D)(1)(c) requires those seeking working-wage loss compensation to make a good faith effort to find "suitable employment which is comparably paying work" if they are not engaged in such work. "Comparably paying work" is defined as "suitable employment in which the claimant's weekly rate of pay is equal to or greater than the average weekly wage received by the claimant in his or her former position of employment." Rule 4125-1-01(A)(8). Here, comparably paying work means work paying $910.00 per week, and by rule the claimant must demonstrate his "consistent, sincere, and best attempts" to obtain employment at that pay level.
 The claimant did not engage in [a search for] comparably paying work during the period for which compensation is requested. The claimant's weekly earnings in that period range from $0 to $340.40. The $340.40 represents the earnings for each of 2 weeks, 12/06/1999 to 12/10/1999 and 01/03/2000 to 01/07/2000. The claimant earned $336.00 for each of 16 weeks in the period February, 2000 through the first week of June, 2000. During those weeks the claimant worked 36 hours at 2 jobs. Thereafter, the claimant earned $250.00 per week, at $6.25 hourly for 40 hours, working as an "account manager/supervisor" for a landscaping company.
 The claimant has not shown a good faith effort to obtain comparably paying work and eliminate his considerable wage loss. In making this finding, the District Hearing Officer notes that the claimant has a high school education; supervisory experience as a trainer and dispatch officer in-charge with the Columbus Fire Department; and technical experience and certification in dispatch and radio programming, as listed in the claimant's application for electronic system technician on file. The District Hearing Officer further notes that the number, quality, and regularity of contacts with prospective employers or employment agencies do not evince a consistent, sincere, and best attempt to obtain comparably paying work. During the period at issue, the claimant in written summary reports: a January, 2000 interview for a new position (at then current employer Southwestern City Schools) as a STARs coordina-tor; filing with Ohio Bureau of Employment Services in February, 2000; and discussing employment over lunch with T. Truffant, also in February, 2000. In addition, a job class interest sheet which cites classifications but not actual openings appears to have been downloaded from a website on 03/01/2000. There is also a completed application for "Electronic System Technician" on file, but it is unclear when and if it was submitted, and whether the position was open.
 There is no indication that more than 1 of these few contacts occurred in any given week during the period at issue. Therefore, the District Hearing Officer finds that wage loss compensation is not supported for any week, and the entire period is denied.
10. Relator administratively appealed the DHO's order. Following an April 12, 2001 hearing, a staff hearing officer ("SHO") issued an order stating:
 The order of the District Hearing Officer, from the hearing dated 12/21/2000, is affirmed. Therefore, the C-140, filed 09/01/2000, remains denied for the reasons specified by the District Hearing Officer.
 Additionally, the Staff Hearing Officer notes a lack of any medical evidence in file which specified claim related physical restrictions during the period of 12/08/1999 07/03/2000, which is almost all of the period initially requested by claimant and granted by the Bureau order of 11/03/2000.
 The Staff Hearing Officer thus adopts the District Hearing Officer order in its entirety in affirming it.
11. On May 11, 2001, another SHO mailed an order refusing relator's administrative appeal from the SHO's order of April 12, 2001.
12. On July 30, 2001, relator, Norman Parrish, filed this mandamus action.
Conclusions of Law:
It is the magistrate's decision that this court issue a writ of mandamus, as more fully explained below.
Ohio Adm. Code 4125-1-01 sets forth the commission's rules with respect to the application for and the adjudication of wage loss compensation.
Ohio Adm. Code 4125-1-01(A)(7) states:
 "Suitable employment" means work which is within the claimant's physical capabilities, and which may be performed by the claimant subject to all physical, psychiatric, mental, and vocational limitations to which the claimant is subject at the time of the injury which resulted in the allowed conditions in the claim or, in occupational disease claims, on the date of the disability which resulted from the allowed conditions in the claim.
Ohio Adm. Code 4125-1-01(A)(8) states:
 "Comparably paying work" means suitable employment in which the claimant's weekly rate of pay is equal to or greater than the average weekly wage received by the claimant in his or her former position of employment.
Ohio Adm. Code 4125-1-01(C)(2) states:
 A medical report shall accompany the application. The report shall contain:
(a) A list of all restrictions;
 (b) An opinion on whether the restrictions are permanent or temporary;
 (c) When the restrictions are temporary, an opinion as to the expected duration of the restrictions;
(d) The date of the last medical examination;
(e) The date of the report;
 (f) The name of the physician who authored the report; and
(g) The physician's signature.
Ohio Adm. Code 4125-1-01(D) states in part:
 In considering a claimant's eligibility for compensation for wage loss, the adjudicator shall give consideration to, and base the determinations on, evidence in the file, or presented at hearing, relating to:
(1) The claimant's search for suitable employment.
 (a) As a prerequisite to receiving wage loss compensation for any period during which such compensation is requested, the claimant shall demonstrate that he or she has:
(i) Complied with paragraph (C)(2) of this rule * * *;
* * *
 (b) A claimant may first search for suitable employment which is within his or her skills, prior employment history, and educational background. If within sixty days from the commencement of the claimant's job search, he or she is unable to find such employment, the claimant shall expand his or her job search to include entry level and/or unskilled employment opportunities.
 (c) A good faith effort to search for suitable employment which is comparably paying work is required of those seeking non-working wage loss and of those seeking working-wage loss who have not returned to suitable employment which is comparably paying work * * *. A good faith effort necessitates the claimant's consistent, sincere, and best attempts to obtain suitable employment that will eliminate the wage loss. In evaluating whether the claimant has made a good faith effort, attention will be given to the evidence regarding all relevant factors including, but not limited to:
 (i) The claimant's skills, prior employment history, and educational background;
 (ii) The number, quality (e.g., in-person, telephone, mail, with resume), and regularity of contacts made by the claimant with prospective employers, public and private employment services;
* * *
 (iv) * * * [F]or a claimant seeking any amount of working wage loss, the amount of time devoted to making prospective employer contacts during the period for which working wage loss is sought as well as the number of hours spent working; while the adjudicator shall consider this comparison in reaching a determination of whether there was a good faith job search, the fact that the sum of the hours the claimant spent searching for work and working is not as many hours as were worked in the former position of employment shall not necessarily be dispositive[.]
Three issues are presented: (1) whether the absence of Dr. Huntress's "medical report" at the April 12, 2001 hearing was grounds for denial of the wage loss claim; (2) whether the commission abused its discretion in failing to make a finding supported by some evidence that relator is qualified for comparably paying work; and (3) whether the commission abused its discretion in finding that the number, quality and regularity of contacts with prospective employer's fails to show a consistent, sincere and best attempt to obtain comparably paying work.
The magistrate finds: (1) the absence of Dr. Huntress's medical report at the April 12, 2001 hearing was not grounds for denial of the wage loss claim; (2) the commission did abuse its discretion in failing to make a finding supported by some evidence that relator is qualified for comparably paying work; and (3) the commission abused its discretion in finding that the number, quality and regularity of contacts with prospective employers fails to show a consistent, sincere and best attempt at obtaining comparably paying work.
Turning to the first issue, the January 9, 2000 type-written narrative report of Dr. Huntress was undisputedly before the SHO at the April 12, 2001 hearing. Clearly, that report complies with Ohio Adm. Code4125-1-01(C)(2). That the bureau's form "medical report" was not available to the SHO at the April 12, 2001 hearing is irrelevant given that the narrative report complies with the commission's rule. Accordingly, the commission, through its SHO, abused its discretion in denying wage loss compensation on grounds that there was a lack of medical evidence addressing physical restrictions. Moreover, there was no real dispute before the commission that relator was permanently unable to return to work as a fire fighter as a result of his industrial injury. State ex rel. Chora v. Indus. Comm. (1996), 74 Ohio St.3d 238 (a claimant's former position of employment is obviously "comparably paying work").
Turning to the second issue, Ohio Adm. Code 4125-1-01(D)(1)(c) does impose upon the working wage loss claimant a duty to make a good faith effort to search for suitable employment which is comparably paying work. Thus, relator was obligated to search for work comparable in pay to his former position of employment as a fire fighter unless he is not qualified for any type of work that is comparable in pay to the former position of employment. Ohio Adm. Code 4125-1-01(D)(1)(c) does not require the wage loss applicant to search for work for which he is not medically and vocationally qualified. The record contains a vocational report from Al Walker, which was rendered at the request of the Police and Firemen's Disability and Pension Fund. That report states that relator's earning capacity has been reduced by his injury and that relator could expect to earn only $7.37 to $10.84 per hour starting a new job. (Relator made $22.75 per hour as a fire fighter.) While the commission is not bound by the Walker report as the commission points out in this action, it cannot simply assume that relator remains qualified for work paying $22.75 per hour. Moreover, to simply note that relator has a high school education, supervisory experience as a fire fighter, and some technical experience is not tantamount to a finding supported by some evidence that relator is qualified for comparably paying work. In short, the commission abused its discretion in failing to make a finding supported by some evidence that relator is qualified for comparably paying work.
Turning to the third issue, Ohio Adm. Code 4125-1-01(D)(1)(c)(ii) does require the commission to evaluate the job search effort by considering the number, quality and regularity of contacts made with prospective employers. However, Ohio Adm. Code 4125-1-01(D)(1)(c)(iv) states that the commission shall compare the amount of time devoted to making prospective employer contacts against the number of hours spent working. Here, relator often worked thirty-six hours per week working at two part-time jobs. In finding that the job search efforts fell short, it appears that the commission failed to take into account the time relator was working. Moreover, relator's employment searches were often successful, a factor that the commission should take into consideration.
The commission cannot hold relator accountable for making potential employer contacts to the same extent as an applicant who is not working or only working minimally.
In short, the commission abused its discretion in finding that the number, quality and regularity of contacts with prospective employers fails to show a consistent, sincere and best attempt to obtain comparably paying work.
Accordingly, for all the above reasons, it is the magistrate's decision that this court issue a writ of mandamus ordering respondent Industrial Commission of Ohio to vacate its order denying relator's wage loss claim, and in a manner consistent with this magistrate's decision, to enter a new order that either grants or denies relator's wage loss claim.